Okay, we'll start with the United States v. Muskett case, which is 17-2123. And we'll hear first from the appellant. Good morning. May it please the court. My name is Eric Altenheimer. I'm an assistant federal public defender in the District of New Mexico, and I represent the appellant, Mr. Donovan Muskett. This court must vacate Mr. Muskett's conviction and sentence under 18 U.S.C. section 924C. Mr. Muskett was convicted and sentenced under the section 924C residual clause. That clause is now unconstitutional. Moreover, at the time he was convicted and sentenced, the crime of assault with a deadly weapon was not. Under clear Tenth Circuit precedent, a crime of violence under the 924C force clause. As a result, Mr. Muskett's unconstitutional conviction under the residual clause of 924C is not harmless because to apply current law to Mr. Muskett would violate his due process right to notice and fair warning. I want to briefly discuss the due process implications of harmless error review in this case. Mr. Muskett was convicted and sentenced in 2013. His conviction and sentence predated the Supreme Court's decision in Castleman. At the time of his conviction and sentence, the clear, undisputed governing law in the Tenth Circuit was that indirectly causing bodily injury did not constitute the element of physical force under the 924C force clause. The Tenth Circuit's decisions in U.S. v. Perez Vargas and U.S. v. Rodriguez Enriquez make this very clear. This was the settled and clear law in the Tenth Circuit. And that standard, that the indirect causation of bodily injury was not physical force, was widely shared among the circuit courts of appeals. In the Tenth Circuit, at the time of the incident giving rise to this case, it was unexpected that this settled law would be upended by the Supreme Court's decision in Castleman. It was further unexpected that Castleman's holding in a case involving the term misdemeanor crime of domestic violence would then be extended in U.S. v. Ontivero from the Tenth Circuit to the term physical force as it is used in defining crime of violence under federal law. At the time of the incident in this case, when he was convicted and sentenced, the law in the Tenth Circuit was clear. Assault with a dangerous weapon was not a crime of violence under the 924C force clause. To retroactively apply current law would violate Mr. Musket's right to fair warning and notice that is required under the due process clause. I want to turn now and discuss the implications of this case under the due process clause. Supreme Court precedent provides a clear line of demarcation between the natural progression of the common law on one side and judicial decisions that constitute an unexpected and indefensible change in the law on the other. The change from Perez Vargas and Rodriguez Enriquez to Castleman and Ontiveros was not the simple natural progression of the common law. It was, rather, analyzed at the time Mr. Musket pleaded guilty and was sentenced, an indefensible and unexpected change in the law. That analysis of what is unexpected and indefensible looks to whether a judicial construction of a criminal statute is unexpected with regard to the law as it existed at the time the offense was committed. The due process clause and the implicit requirement of fair warning and notice demand that we look to the law as it existed at the time of the offense and whether the subsequent change in the law was, at that precise moment, unexpected and indefensible. In this case, there is nothing that would have given Mr. Musket the fair warning and notice that a crime that could be committed by the indirect causation of bodily injury would qualify as a crime of violence under the force clause. Both Perez Vargas and Rodriguez Enriquez clearly established that the indirect use of force is not physical force under the force clause. Particularly, Rodriguez Enriquez conducts a thorough analysis of the force clause and the term physical force. Rodriguez Enriquez concluded that to find that the indirect causation of bodily injury constituted physical force would have rendered the term physical redundant. At the time of the incident in this case, Perez Vargas and Rodriguez Enriquez were the clear law in the Tenth Circuit. It would have been unexpected to believe that that law would change in a way that would turn a complete 180-degree reversal from the analysis in Rodriguez Enriquez. Mr. Musket had no fair warning that his conduct would qualify as physical force under the force clause. Absent the now unconstitutional residual clause, Mr. Musket would never have been convicted under 924C. The remedy in this case is to vacate the judgment in sentence and to remand this case to the District Court, consistent with U.S. v. Moore. Now, in 2013, when the offense was committed, there was a conflict in the circuits, wasn't there, Mr. Elsenheimer? Because Perez Vargas had reached a conclusion with regard to physical force that was contrary to the precedent in the Seventh and Ninth Circuits, right? Your Honor, I believe that there was some implicit disagreement in the circuits. But even in the Ninth Circuit, which, at least based on my reading of the law, seems to be where most courts find the circuit split to have arisen, even in the Ninth Circuit, there appears to have been a circuit split. And that's referenced in the Rodriguez Enriquez case, as the Ninth Circuit decision of Beltran Munguia, which essentially says that drugging a victim's drink is not the use of force. So, even in the Ninth Circuit, there was an intra-circuit split. Regardless of any disagreement, which I don't think that there was a significant disagreement amongst the circuits, there was clear... there were a number of circuits, including the Second Circuit, the Fourth Circuit, the Fifth Circuit, that had agreed with Perez Vargas. But regardless of any disagreement in the circuits, the law was clear in the Tenth Circuit that indirect causation of bodily injury was not the use of force. And particularly the Rodriguez Enriquez decision goes through a very detailed analysis of why that is the case. It would be unexpected for someone at the time to think that that law would change, given the amount of consideration the Tenth Circuit had given it, both in Perez Vargas and particularly Rodriguez Enriquez. At the time, Mr. Muskett, in 2013, he would not have... he would not have been able to have been convicted under the 924C Force Clause. How do you deal with the... Oh, go ahead. Go ahead, Judge McHugh, sorry. In Curtis Johnson, which was issued nearly three years before the conduct giving rise to Mr. Muskett's criminal charges, the Supreme Court indicated that violent force is force capable of causing physical pain or injury to another person. Shouldn't that start to give notice that they were looking at force differently than the Tenth Circuit had interpreted it? I think if anything, the Johnson one, the U.S. v. Curtis Johnson case, indicated that violent force was of the type that would be analyzed in a way consistent with Rodriguez Enriquez, and that Rodriguez Enriquez was merely echoing the progression of the law that was moving with the first Curtis Johnson case. Let me interrupt for a minute, counsel. What Curtis Johnson did is it focused on physical, meaning that it wasn't intellectual or emotional force. Which didn't necessarily mean it had to be directly physical. Would you agree with that? I think Curtis Johnson was focused on the definition of force as it applies to a host of various state crimes, and Curtis Johnson focused on how state misdemeanor battery or the type of contact that ensues with a state misdemeanor battery is not the type of force contemplated by the force clause. That's the focus of Curtis Johnson, and I don't think it signaled anything about a change in the law that would open the law to a redefinition of force as the indirect causation of bodily injury. Thank you. Certainly. Judge Bachrach, did you also have a question? Yeah. Thank you, Mr. Elsenheimer. I just wanted to follow up. Let's say that there is an infracircuit split in the Ninth Circuit on this issue of whether or not there needs to be the Perez-Vargas issue that was in Perez-Vargas. Isn't it always essentially foreseeable that if there is any intracircuit split or even a greater chance if there's an intracircuit split that the Supreme Court will say, we've got to resolve this. Not only do we have an intracircuit split, but we've got different panels within the Ninth Circuit that are trying to figure this out. Obviously, they did take cert in Castleman. Why wasn't it foreseeable under the Bowie test that there was an unexpected and indefensible change in the law in 2013 when the crime was committed that the Supreme Court was ultimately going to resolve the conflict? Since there were panels in published opinions that were taking an approach contrary to Perez-Vargas, that it would have been foreseeable in 2013 that the Supreme Court would take the issue and may very well change the law that had been the precedent under Perez-Vargas in our circuit. Thank you, Your Honor. The question of foreseeability and the question of whether something is expected or unexpected looks to the point in time when an incident arises, when something happens that could be or could not be a crime. In this case, the question is, what was the law at the time of the incident in Mr. Musket's case? And the law was very clear in the Tenth Circuit that the indirect causation of bodily injury was not physical force under the force clause. That is the moment in time that we analyze whether something is expected or unexpected. Certainly, laws change, but the question is, is that change in the law such that it renders something that was not previously a crime under a particular statute, renders something that was not a crime, now becomes a crime because of the change in the law? We are not talking about a situation where the development of a common law such that, let's take an example of the progression of the definition of dangerous weapon under this particular provision, 113A3, where one court may say that a dangerous weapon is a gun and another court may say it's a hammer, and that common law evolves such that eventually a belt is considered a dangerous weapon and a pair of shoes. That is the natural progression of judicial construction of statutes or common laws. A dramatic change in the law where something that is previously not a crime becomes a crime, that is the point in time that we analyze the foreseeability of that change or the unexpected nature of that, and it imports the due process definition of fair warning and due notice. And so we take that Your Honor's question of how do we analyze this knowing now what we know, given the vast change in the law from 2013 to Castleman to Ontiveros. How do we analyze that? We analyze that by looking at the, we stand in the shoes of someone in 2013, and in 2013 the indirect causation of bodily injury was not a crime under the 924C4 clause. It was not physical force. Well, it wasn't a crime in the Tenth Circuit. This is Judge McHugh, and I think part of what Judge Bachrach was asking is, is it enough to focus just on what the Tenth Circuit was doing, or does fair notice include being aware of the intra-circuit split within the Ninth Circuit and the inter-circuit split between the Ninth Circuit and the Tenth Circuit? Thank you, Your Honor. And I think the answer to that question is found in the Supreme Court's decision in U.S.C. Marks. U.S.C. Marks involved a change in the definition of obscenity under the obscenity law, federal obscenity laws. And it was a change from the Miller standard, I'm sorry, from the Memoir standard to the Miller standard. The Memoir standard, I believe, was a plurality decision, and the argument in Marks was that these defendants should have had notice because it was only a plurality decision. Notwithstanding the fact that it was just a plurality, the Supreme Court said this was the law at the time, regardless of the fact that everyone may have known that it could have changed. This was the law at the time, and that's what the defendants based their actions on. The fact that there was a subsequent change to the law, they had no notice and fair warning because the law at the time was the Memoir standard. Your Honors, I see that I'm at the expiration of my 15 minutes. Okay, thank you. Mr. Elsenheimer, I don't recall you citing the Marks case in your briefs. Oh, no, you did, actually, in your reply brief. We did, yes, Your Honor. Yeah, yeah, so sorry about that. Well, I'll start with Judge McHugh. Do you have any additional questions for counsel? I have one question about the timeliness of the petition. You filed it within one year of Johnson. We've now held that for 924C, the new rule was announced in Davis. Were you required to refile within a year of Davis? Was your petition premature? I don't believe that it was, Your Honor. The government appears to have waived that issue. Regardless of the one-year limitation, I believe that the government and the defense agree that if Mr. Muska is innocent under the 924C force clause, his petition would be timely. And I think that's the same situation that was presented in U.S. v. Bowen. So if you rely on actual innocence to avoid the timeliness issue, we'd have to agree with you on your due process argument, right? That's right, Your Honor. So if we didn't agree with you on your due process argument, is your petition timely? I still believe that it is because it was timely filed following the Johnson decision. And, again, the government waived any timeliness argument and essentially conceded that this matter is timely. Can the government waive our jurisdiction? I know in the government's answer brief they recognized that it would be – they don't see any reason to require a refiling of the petition in this case. Again, I believe that our filing originally following the Johnson case makes this matter timely. Okay. Thank you. Thank you, Judge McHugh and counsel. Judge Iye, do you have any additional questions for counsel? I just wanted to follow up on the issue of whether the government can actually waive the requirement. I'm not sure you answered Judge McHugh's question on that. I mean, do they have the power to do that? And if they do, why? Your Honor, again, with regard to the timeliness issue, I believe that even if there isn't a one-year time – even if this is untimely under the statute of limitations, which we do not concede in any way that it is, I believe that it's timely because it was filed within one year of Johnson. And Johnson clearly rendered the act of residual clause unconstitutional. That same analysis applies to 924C. But regardless of that particular timeliness issue, as in U.S. v. Bowen, this matter is timely because I believe both parties recognize that if Mr. Muska is innocent under the 924C force clause, this matter is timely. Okay. Thank you. Okay. Thank you, Judge Iye. Counsel, I have one somewhat unrelated question. And I do want you to know that your time is – we're not penalizing you. There's been time, as I mentioned before. I really had a question that the government hasn't taken issue with preservation. But I don't recall you making your ex post facto argument in district court. We do have waived labor, forfeited forfeiture principles that – in our court sometimes with divergent conclusions. But why haven't you forfeited your ex post facto argument by failing to alert the district court to that argument? Obviously, the district court – not obviously, but if I'm correct in reading the district court record, the district judge didn't have the opportunity, as we do, to address this Bowie ex post facto argument. Your Honor, that was not raised in our district court briefing because at the time Perez-Vargas was still the law in the Tenth Circuit. I don't believe it was until after our district court briefing that Ontiveros was decided. And in light of that, in light of Perez-Vargas being the law in the district – I'm sorry, in the circuit at the time, Perez-Vargas and Rodriguez-Enriquez, our argument rested on the fact that the indirect causation of bodily injury was not physical force under the force clause. Okay, well let me – can I – go ahead. I'm sorry. No, no. I only wanted to say that the change in the law with Ontiveros, I believe, was after our briefing in the district court. I think that is right, but let me test that a little bit. Castleman, at the time he filed the 2255, Castleman had been decided, and obviously, as you know, a panel can't overrule another panel unless the Supreme Court has superseded our precedent. And I think Judge Kelly's opinion in Ontiveros, since he wasn't speaking for an unbought court, had said that the conclusion in Ontiveros was essentially the inevitable offspring of Castleman. So you did have the benefit of Castleman and not Ontiveros, right? That's right. And we did address Castleman in our briefing, and we addressed Castleman because the law in the 10th Circuit had not evolved to Ontiveros. We addressed Castleman in that Castleman was limited to misdemeanor crimes of domestic violence, and it was analyzed in that context. To the extent, I believe that the ex post facto problems arise with harmless error implications, which is what we addressed in our supplemental briefing, based on the fact that the changes in the 10th Circuit, from the Supreme Court's decision in Davis to Bowen in the 10th Circuit, that made harmless error a live issue in Mr. Musket's appeal, which is why the court asked us for supplemental briefing. And we addressed that harmless error in that supplemental briefing. I don't believe those issues were present when we had the district court briefing. Okay. Okay. Well, thank you very much, counsel. So we'll hear from Ms. Rizzoni for the affiliate. Good morning, counsel. May it please the court. Jennifer Rizzoni on behalf of the United States. Under current 10th Circuit and Supreme Court precedent, assault with a dangerous weapon pursuant to 18 U.S.C. section 113A3 is a violent felony for purposes of charging a violation of section 924C. Further, and what it sounds like the court may be most interested in, is the ex post facto clause is not applicable here, as Musket is not being subjected to a conviction for an offense that was not a crime when he committed it. Further, he can't be heard to argue that the developments in Castleman and Ontiveros were somehow unexpected and indefensible, given the state of the law beginning in 2010 with Johnson 1, where the Supreme Court first began addressing the notion of violent force in the context of a violent felony. Briefly, although the court doesn't seem quite as interested in it, the government does set forth and believes that assault with a dangerous weapon is, in fact, a crime of violence under the element clause under 924C, and case law does, in fact, support that. As this court knows, the court goes through a categorical approach, and assault with a dangerous weapon can be committed by a willful attempt to inflict bodily injury or a threat to inflict that same bodily injury. And what we know from both Castleman and Ontiveros is that the knowing or intentional causation of bodily injury necessarily involves the use of physical force. We know also from Ontiveros that the force can be caused through poison or even physically harmful neglect, and the Supreme Court further brought this out in Stokling, where it said that the force need not be particularly strong or likely to cause pain or injury. Given that 18 U.S.C. 113A3 is, in fact, a violent felony for purposes of Section 924C, the only recourse that the defendant has here is going back to the ex post facto clause. And essentially, what he needs to show is that he wasn't on notice and that the law was in some way unexpected or indefensible. And so first of all, the defendant had to have been on notice because we all know that back in 2013, his offense was, in fact, a criminal offense because it fell under the residual clause. And we know now that the offense is, in fact, a criminal offense because it falls under the elements clause. So really what we need to be looking at is whether or not it was unexpected and indefensible. And one of the things, Judge McHugh, you pointed out was the defendant wants the line in the sand to be at Castleman. But, in fact, the line in the sand began at Johnson 1, and so beginning even there, we know that it wasn't unexpected or indefensible. But going back to the two primary cases cited by, I believe, both parties related to the ex post facto clause, that being Bowie v. City of Columbia and Marks v. United States, both cases are really instructive to this court as to whether or not the ex post facto clause applies. In Bowie, there was an alleged trespass of two African-American students who sat in what was apparently a whites-only restaurant in Columbia, South Carolina. And what the trespass statute said was essentially that the students, if there was no notice of trespass, then the student could not be guilty of that crime. But upon appeal to the Supreme Court, the Supreme Court of South Carolina, that is, they expanded the statute to say that including staying after being told to leave, being given notice while the trespass was occurring, was also a crime. And what the Supreme Court said in that case was when a statute is narrow and lulls a potential defendant into being given a false sense of security, that's when the ex post facto clause could take effect, and in fact did in Bowie. But when a statute is a little bit more vague and overbroad, it gives some question of coverage. And that can be said here in the 924C context related to 113A3. What we know is that back in 2010, the Supreme Court was already looking at what constituted a violent felony. And so there is, and it wasn't narrow, it wasn't creating that lull of a false sense of security that somehow this would not be found to be a violent crime. Looking at Marks v. United States, a case that came about 13 years after, again an ex post facto case and something my opposing counsel discussed, that case is a little bit different because it involved a jury instruction. And in fact, the law had already changed between the time that the defendants were charged and the time that they were going to trial. And so the defendants had requested a jury instruction that actually used the newer standard that had been employed and the district court chose not to. And so in Marks, the court found that that was inappropriate. The law had changed. The defense had crafted their defense based on the change in the law, and so the ex post facto clause applied. Your Honor, finally, should this court choose for some reason to vacate the conviction, we would ask that this matter be remanded to the district court with instruction to enter judgment on the two underlying claims. I will say that... Oh, sure. Have we been three minutes yet, Judge Bethreck? Yes. Let me ask you a question about that. That would... We would then be instructing the district court to sentence Mr. Musket on crimes to which he did not plead guilty. That seems problematic to me. So... Thank you, Judge McHugh. So in this case... So I just... If I may step back just for a moment, because the United States be more just so the court is aware was actually issued the same day we filed our response brief, so we didn't have an opportunity to see that case before filing. And I'm sure that you all have looked at it. It's an unpublished case which doesn't have a lot of analysis. But in it, the United States had relied on U.S. v. Smith. And in that case, and what the more opinion focuses on is that Smith was at trial, and so there were facts. And so what I would say, Your Honor, is that what we have in this case, we have a plea. But what we also have is we have a plea where the defendant made admissions specific to the assault resulting in... Excuse me, the assault with a dangerous weapon. And that's in the record in the first volume at page 18. Particularly, he admitted both to the assault with a deadly weapon and to aggravated burglary, and he set forth very specific facts as to how he committed the assault in detail under oath. And so the United States would contend that, in fact, the court does have the authority to enter judgment on that particular count. Well, does it matter that you dismiss the indictment after those charges? Well, Your Honor, and what I would say is this would be a similar situation to when you would have to remand. In any case where there's a plea and counts have been dismissed, it comes back to the district court, and the government would have to request that the counts be reinstated. But based on the new law, I think fundamental fairness would require that the district court do that. And I know that the defense does cite Fraunfelter. I would say that in that particular case, it's a very unique case where the government made a pretty big mistake related to the plea agreement and having a defendant plea to a misdemeanor when, in fact, it intended to have him plea to a felony, and that's certainly not the case here. This is an actual change in the law if the court were to vacate the conviction and send it back to the district court. Your Honors, I guess what I would do here is we would ask this court to affirm the defendant's conviction pursuant to Section 924C, and in doing so, hold that a fault with a dangerous weapon under 18 U.S.C. 113A3 is, in fact, a violent crime under the Elements or Force Clause of 924C. But I would obviously welcome any questions that you would have on any of the issues that are in the briefing. Well, this is good. I have a question. Can I continue? Oh, sure. I was going to ask you any additional questions, so perfect. I am just wondering if you could directly address your colleague's argument that the defendant here was entitled to rely on Perez-Vargas and Rodriguez-Enriquez. At the time or in terms of potentially waiving the ex post facto argument? Well, either way. I mean, at the time and ex post facto. I mean, you haven't mentioned either of those, and I'm wondering just what is your take on that? Sure, Your Honor. I mean, it is the government's position that, in fact, at the time that the defendant was convicted and sentenced, that Perez-Vargas did provide that assault with a dangerous weapon did not fall under the Elements Clause. So we would concede that fact and that the law changed with Castleman and with Ontiveros later. And so that is why the ex post facto presumably was not taken into account in the briefing below. Does that answer your question, Your Honor? It does. Thank you. Okay. Judge Ott, do you have any additional questions? No, I don't. Okay. Thank you. Judge McHugh, do you have any additional questions? Yeah, I want to focus again on timeliness because I found the United States a little bit confusing in the briefing because I'm not entirely sure you're conceding timeliness because after you say that, yeah, it's premature, but we will treat it as timely, then you go into a discussion of actual innocence, which would assume from my perspective would mean it's untimely, but there's an excuse for untimeliness. So where is the government on this? I'm having a hard time putting my finger on it. Well, I apologize for the confusion, Your Honor. But what we are saying essentially is that, yes, and in fact this is not a timely petition, that filing his 2255 after Johnson that did not address 924C was not timely because Davis had not been decided. And to make it technically timely, he would have had to have filed the 2255 after Davis within a year, essentially, of Davis being issued. But that all being said, there is, from our perspective, there's kind of a chicken and an egg problem because then you do go to the actual innocence understanding, the actual innocence, I guess I'll call it an excuse, in that if he is actually innocent of the 924C, then his petition regardless was timely. And so from the government's perspective, we decided to go forward on the merits because in order to decide, he has a timely petition if, in fact, he is actually innocent and he will be actually innocent if this court is to decide either that 113A3 is not a violent crime or that ex post facto consideration should apply. And so if we decided ex post facto doesn't apply and so he's not actually innocent, should we dismiss it as untimely? Your Honor, that would be, I mean, that is the position of the United States, and I apologize that it wasn't more clear in the brief. But, yes, at that point his petition would not have been timely because he filed it pre the issuing of the opinion in Davis, and Davis was the only case that applied to 924C. Okay. Thank you. Okay. Thank you, Judge McHugh. Do you have any additional questions? No, I don't. Thank you. Okay. I do have a few questions. I do want to follow up with your last answer to Judge McHugh because what you just said, Mr. Rizzoni, seems to be at about face from what you said on page 9 of your red brief where you basically following the Greer analysis that the claim is predicated on Davis, not Johnson too, that, as you just said, that he would technically need to file a, to basically dismiss this 2255 and refile a new 2255 within one year of Davis because we know under Bowen that that's retroactive. And then on page 9 of your red brief you said as a technical matter then Muscat would need to file a new 2255 within one year of Davis to make his claim a timely one. Under the circumstances, however, the United States does not see a reason to require that. So when I read that, I thought, and maybe I'm just misreading it, but I thought you had explicitly waived timeliness because even apart from actual innocence, I think the import of that to me was, okay, we're not going to make him just drop everything, refile, and then we'll be right back where we are. Your Honor, I think what we were trying to do there, and I don't think, I know what we were trying to do there, is to streamline this whole process because he could have, and technically from a procedural perspective, he should have filed the 2255, should have been dismissed, and a new 2255 should have been filed within a year of Davis. But what we were trying to do in this case, and perhaps the court did not appreciate it, that we were just trying to streamline this process and that the court was going to get to this issue, presumably he would have dismissed and a new 2255 would have been filed and we would be right back where we are today. And so if, in fact, the court feels that we intentionally or overtly waived the timeliness issue, in the end it probably doesn't make a difference because it would have had to get to the merits of the claim regardless. Okay. Well, I understand. And I don't want you to think that we're probing you out of any criticism or a lack of appreciation. We're just really, I think, speaking for myself at least, I'm just really trying to get a handle on whether you have intentionally relinquished a known right to, in other words, whether you've waived a timeliness defense. So I'll just ask you the question point blank. Are you intending to waive timeliness? You know, Your Honor, for purposes of this particular case, I will say yes. All right. And I'm not trying to trick you or anything. I understand. I'm just trying to get your position. So let me probe you a little bit on the ex post facto issue. So I guess the first question is, your argument that the 924C3A residual clause put him on notice seems questionable because Davis specifically says that an unduly or unconstitutionally vague statute is not sufficient to put a defendant on notice that what he is doing is violating a particular criminal statute, his statute. So how could 924C3A, if we know now that it is unconstitutionally vague under Davis, how could that have put him on notice that what he was doing was that you can avoid the ex post facto issue by relying on a unconstitutionally vague statute? I think the idea, Your Honor, is that it wasn't unconstitutionally vague back in 2013, 2014. And so everyone understood it to encompass a crime like 113A3. And so the fact that later in 2019 the Supreme Court found it to be unconstitutionally vague doesn't change the fact that in 2013, five or six years earlier, everyone understood it to be a crime. And so that's the argument, that there was notice because everyone understood it to be a crime and, in fact, it was a crime right up until Davis in 2019. So why didn't, in Davis, why didn't the Supreme Court say, well, Mr. Davis, we're going to make this perspective only. We're not going to vacate your 924C3 conviction because you didn't know what we're telling you now. Well, I mean, how do you reconcile the fact that what you just said, it seems to be incompatible with the fact that the Davis holding was retroactively applied to Mr. Davis? Your Honor, it was retroactively applied. I cannot deny that. But that all being said, it's what we knew at the time. And understanding that it was eventually retroactively applied and his conviction was vacated, it's what the people know at the time of the actual events. And what I'd like to go back to, if I may, is ex post facto, it's really a fundamental rule of fairness and due process. And it's less, I believe, technical than some of the other arguments that can be made. And so whether a defendant knows that something is criminal or not is really the question. And back in 2013-2014, it was a criminal act that he engaged in. And so really it's a matter of is it fair? Yes, it was a criminal act that he engaged in back in 2013-2014, and it's a criminal act now. And therefore it's our position that ex post facto clause would not apply here. Yeah, sorry. Okay, thank you. So I want to switch gears a little bit and take a somewhat different one of your arguments on the ex post facto clause, and that is the foreseeability that Perrin Vargas would ultimately be vacated and a different rule would take place. Because even though canceling hadn't been decided in 2013, Well, isn't the obvious counterpoint to that, that the Sixth Circuit's opinion in Castleman didn't read Johnson One the way that you have, or that the Castleman majority did. And so how could we say that Johnson One was so clear that the prevailing view under Johnson One would have ultimately led to this evolution of case law, beginning with Castleman and then Ontiveros, that would ultimately lead to the vacater of Perrin Vargas? Since we know that the Sixth Circuit in Castleman did not read Johnson One that way. Your Honor, I think that what you have to look at really is the standard, and the standard is whether it's unexpected and indefensible. And based on Johnson from 2010, based on the fact that we know at least the Ninth Circuit looked at things differently from Perrin Vargas, regardless of what the Sixth Circuit did below in Castleman, the standard's high. It has to be unexpected and indefensible. And here, it could have been expected, and it's not indefensible. We know that the law was evolving and changing, and people were expecting things to change. And I think that even, going back to our original conversation, goes back to the fact that defendants filed his 2255 not after Davis, but after Johnson, because they were seeing the changes in the law. And so I think it has to be completely unexpected, completely indefensible, like it was in Bowie, where the South Carolina Supreme Court truly changed the law, in that students who were sitting trespassing in a restaurant, having been told that they needed to leave, didn't leave, that that then became the criminal act, as well as simply having no notice to begin with. Okay, thank you. So let me ask one further question, and I want to go back to Mr. Elsenheimer's argument that, well, what you're really testing the Bowie analysis is you're looking at the time that the defendant committed the offense. Maybe it's a fiction. I mean, it's unlikely that anybody that commits assault with a dangerous weapon, or arguably commits assault with a dangerous weapon, is pulling out the statutes and looking at the residual flaws, the element flaws, and deciding whether to do the assault. But Bowie is a Supreme Court precedent, and we do have that test. So what his argument is, at least in part, I think, is when you test Bowie based on when the defendant committed the offense, and when he committed this offense, the defining published precedent that governed his conduct was Perez Vargas. Maybe later, if we would have, you know, a few years ago, we would have Octavio Perez, but, you know, when he was doing this crime, it was that's the prism in which we look at when he committed this offense. And I'm sorry to ask you, maybe this is getting into a compound question, but part of my question about this is if you take, you know, our case law with civil litigation with qualified immunity, we typically look at whether or not something is clearly established, a clearly established constitutional violation, and we're very clear that we don't look at new case law. We look at the case law that was published and precedential at the time that the defendant committed the offense in a civil case. And it seems to be that it just is, well, it seems illogical that you would take a completely contrary view when you're looking at even more significant consequence in civil liability in terms of criminalizing conduct in 2013, based on what a panel says, you know, in 2018. So, Your Honor, I think from a practical standpoint, if I have a case in my office that I've received today in 2020, that took place three or four years ago, or essentially, you know, within a statute of limitations, but it was the same exact set of circumstances. I don't think that I think I can go into the grand jury and have the grand jury charge someone with an assault resulting in serious bodily injury and a 924C as it stands today, despite the fact that those actions, the actual criminal offense took place pre all of these cases. And so that is why you use the law now. It just wouldn't make sense for me, for a person to be able to raise that as we sit here today being charged today. Okay. Thank you very much. I appreciate you indulging me with all those questions. Judge Hyde, I'll ask both of you, if you had any follow-up or additional questions. No, I don't. Okay. Thank you. And Judge McHugh, do you? No. Kevin, I think Mr. Olsenheimer is out of time. Is that correct? Yes, he is out of time. Okay. So I do appreciate both counsel's excellent submissions, both in writing and orally today. And so this case will be submitted. Thank you. Thank you. Thank you. Thank you. We'll turn next. Yes, thank you. Thank you all. We'll turn next to the.